DAVID H. MITCHELL v. WASHINGTON D. WOODS.

TRESPASS; *Injured Party, wrongfully in Possession; Damages.* Where W.
is wrongfully in possession of a building and is doing business therein,
and M., who is rightfully entitled to the possession of the building,
irregularly ousts W. therefrom, W. is not entitled to recover damages
for the loss of the prospective profits which he might have made had
he been permitted to carry on his business in said building.

*Error from Leavenworth District Court.*

TRESPASS, brought by *Woods.* The facts are fully stated
in the opinion. Trial at the November Term 1874. Ver-
dict and judgment for plaintiff for fifty dollars damages.
Defendant *Mitchell* brings the case here on error.

*F. P. Fitzwilliam,* for plaintiff in error.

*Taylor & Gillpatrick,* for defendant in error.

The opinion of the court was delivered by

VALENTINE, J.: This was an action for damages, brought
by Washington D. Woods against David H. Mitchell, for
unlawfully removing the plaintiff and his property from a
certain building occupied by him as a livery stable. Both
parties claimed to be entitled to the possession of the build-
ing, and each claimed the same in his own right. The facts
of the case, so far as it is necessary to state them, are sub-
stantially as follows: The lot upon which the building stood
belonged to John A. Halderman. Halderman leased the
same to A. T. Kyle & Co. The firm of Kyle & Co. was
composed of A. T. Kyle and Nannie E. Woods, the wife of
Washington D. Woods. On October 5th 1873, the firm of
Kyle & Co., and each member thereof, with the consent of
Halderman, assigned said lease to Mitchell; but by an agree-
ment with Mitchell said firm was to continue to occupy said
premises upon certain terms and conditions, which terms and
conditions were however never performed. W. D. Woods was

the general agent of the firm, did nearly all their business, and was perfectly cognizant of all the foregoing facts. On November 5th 1873, Nannie E. Woods attempted, for and in the name of the firm of Kyle & Co., to sub-lease said premises to her husband, said W. D. Woods. But this was done without the consent or knowledge of either Kyle or Halderman. It was wholly outside of the scope of the copartnership business; and by the terms of the copartnership organization Mrs. Woods had no authority to transact any business for the copartnership. W. D. Woods and A. T. Kyle were the only persons authorized to transact business for the copartnership. Up to November 14th 1873, W. D. Woods continued to recognize Mitchell's rights in and to said premises. On December 17th 1873, Mitchell gave notice to said firm and to each member thereof, and to W. D. Woods, to vacate said premises. On December 22d 1873, Mitchell commenced an action of forcible detainer against the firm and each member thereof, but not against W. D. Woods, to oust them from the premises. The action terminated in favor of the plaintiff, and against the defendants. W. D. Woods was present at the trial, and was cognizant of all the proceedings. A writ of restitution was then issued to an officer to restore the premises to Mitchell. The officer and Mitchell then proceeded to execute the writ, and then and for the first time so far as Mitchell knows, W. D. Woods claimed the possession of the property in his own right. Up to November 5th 1873, W. D. Woods had possession of the property as the agent of Kyle & Co., and Mitchell supposed he still occupied the property in that capacity. The officer, at Mitchell's instance, then executed the writ by removing all the property found on the premises, and giving to Mitchell the possession of the premises. W. D. Woods then commenced this action against Mitchell for unlawfully removing him and his property from the premises. Now, whatever may have been W. D. Woods' right to the premises as against his wife or Kyle, or Halderman, or the firm of Kyle & Co., we think it must be conceded that he had no

right thereto as against Mitchell. Even if we should consider the judgment in the forcible detainer case as void, and the lease from Woods' wife to himself as valid, still, under the agreement between Mitchell and Kyle & Co., (as its condition had previously been broken,) Mitchell was entitled to the possession of the property as against Kyle & Co. and all persons holding under them. In fact, so far as anything is shown in this case, Mitchell was entitled to the possession of the property as against all the world. Now Woods, at most, obtained only the rights of Kyle & Co. by virtue of the lease from his wife to himself; and he was perfectly cognizant of all the rights of Mitchell. Woods therefore had nothing but the mere naked possession of the property, without right thereto as against Mitchell; and Mitchell had the right thereto, but without the possession. Both claimed the right of possession, and Mitchell believed that his right gave him the right to take possession. But as the writ did not run against Woods, and as Woods was then claiming the property in his own right, and not as agent for Kyle & Co., Mitchell was probably mistaken. It is possible however that this whole claim of Woods was a mere sham and trick. There was no apparent change in the business, and although Woods claims that his wife executed said lease to him on November 5th, 1873, yet he recognized Mitchell's rights down to November 14th. We think the court below erred in instructing the jury that they might allow Woods damages for injuries to his business and for loss of profits therein. He had no right as against Mitchell to carry on business in that building; and by doing so he committed a wrong upon Mitchell's rights. Is he entitled to recover for the loss of the fruits of such wrong? Is he entitled to recover for the loss of the prospective profits of his own intended wrongdoing? Is he entitled to be paid for his own intended wrongdoing? Can he found a right of recovery upon any such intended wrongdoing? And will he recover from the person against whom he intended to commit the wrong? Is he entitled to recover from Mitchell all that he

might have made by carrying on a business in violation of Mitchell's rights? The court below limited the amount that he might recover as follows: "If he resumed business at some other place, and realized profits there in his business, he cannot keep those profits and at the same time recover *the full amount* he might have been making at the old stand. He could only recover the difference in that amount." We do not think he was entitled to recover any prospective profits which might have resulted from his own intended wrong-doing. The most that he could recover would be nominal damages for the irregular ouster, and actual damages for the actual injuries to his property. There was no injury done to his person. And he had no right to recover for the use of the building, a thing which he had no right to use at all.

The judgment of the court below must be reversed, and cause remanded for a new trial.

All the Justices concurring.